UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| THELMA BROWN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 12 C 5179 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WYNSCAPE NURSING & REHABILITATION CENTER and WYNDEMERE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Plaintiff Thelma Brown, who is African-American, filed a *pro se* complaint against Wyndemere LLC ("Wyndemere"),[1] alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, after she was terminated from her position at a nursing home operated by Wyndemere. Wyndemere filed a motion for summary judgment on all of Brown's claims. Because Brown did not establish a *prima facie* case of discrimination, demonstrate that Wyndemere's termination of her was pretextual, or engage in any statutorily protected activity, Wyndemere's motion [28] is granted.

## BACKGROUND

**I.  Compliance with Local Rule 56.1**

As an initial matter, the Court must address Brown's compliance, or lack thereof, with Northern District of Illinois Local Rule 56.1, which provides detailed instructions as to how litigants should prepare their summary judgment motions and responses. Pursuant to Local Rule

---

[1] Wyndemere asserts that it was improperly sued as "Wynscape Nursing & Rehabilitation Center and Wyndemere."

56.1, a party seeking summary judgment must submit a statement of undisputed material facts that support judgment in its favor as a matter of law. N.D. Ill. L.R. 56.1(a). The party opposing the motion must then submit a concise response to the movant's statement of material facts. N.D. Ill. L.R. 56.1(b)(3). That statement is to include a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" N.D. Ill. L.R. 56.1(b)(3)(B). In other words, the opposing party may not simply deny the facts presented by the moving party; it must instead cite "specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Although "it is appropriate to apply [Local Rule 56.1] less strictly to *pro se* pleadings . . . . a *pro se* litigant is not completely excused from the requirements of Local Rule 56.1." *Lumpkins-Benford v. Allstate Ins. Co.*, --- F. Supp. 2d ----, 2013 WL 5952168, at *1 (N.D. Ill. Nov. 5, 2013).

Brown's response to Wyndemere's Local Rule 56.1 statement fails to comply with these requirements. She purports to deny or qualify Wyndemere's statements but does not provide any citations to the record to support these denials or qualifications. All material facts set forth in those paragraphs are thus deemed admitted to the extent supported by the record. N.D. Ill. L.R. 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."). Brown has also admitted that numerous paragraphs of Wyndemere's statement are true while improperly incorporating additional facts or asserting that these statements are taken out of context. The additional statements are stricken. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004); *Buttron v. Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *5 (N.D. Ill. Aug. 4, 2003). Brown's statement of additional facts is also stricken. The

majority of the additional statements of fact are not properly supported by citations, as required by Local Rule 56.1(b)(3)(C). Where provided, the citations do not support the propositions for which they purportedly stand. In summary, in accordance with Local Rule 56.1, the Court deems Wyndemere's statement of material facts admitted and does not consider Brown's unsupported factual assertions in response or in her statement of additional facts. *See Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) (strictly enforcing Local Rule 56.1 was "well within the district court's discretion" even though the plaintiff in the Title VII case was a *pro se* litigant); *Smith*, 321 F.3d at 682–83 (same).

## II.     Factual Background

Wyndemere operates several facilities that provide various living options for senior citizens. One of these facilities, Wynscape Nursing & Rehabilitation Center ("Wynscape"), offers skilled nursing care and specialized short-term rehabilitation for senior citizens and is regulated by the Illinois Department of Public Health ("IDPH"). IDPH conducts annual audits to ensure that Wyndemere is in compliance with its regulations.

Wyndemere is an equal opportunity employer and maintains anti-harassment and anti-retaliation policies. It also employs a progressive disciplinary process, which is set forth in an employee handbook. That process consists of the following steps: (1) a verbal warning, (2) a first written warning, (3) a second written warning with or without a suspension, and (4) termination. Rule violations that result in progressive disciplinary action include "[a]cting in a disrespectful or rude manner," "[f]ailure to properly record time worked," and "[v]iolation of Wyndemere personnel policies." Def.'s Ex. 17 at Def 384. "Refusing, neglecting, or avoiding duties" may result in immediate termination or suspension while the violation is investigated. *Id.* at Def 384–85.

3

### A. Brown's Employment with Wyndemere

Brown was employed by Wyndemere as a Life Activity/Programming Partner ("Life Activity Partner") at Wynscape from approximately June 1, 2010 until February 16, 2011. Brown was supervised by Jennifer Franck, Wyndemere's Life Enrichment Program Manager, who hired Brown and subsequently, terminated her. As a Life Activity Partner, Brown "offer[ed] support to patients/residents with their ongoing mental, social, physical, emotional, behavioral, and/or spiritual wellbeing," was "[r]esponsible for accurately assessing, identifying and executing life enrichment activities," and "[p]rovide[d] aid to the Resident Services Manager with event planning, orchestration of activities, meaningful encounters and overall support of the department." Def.'s Ex. 7 at Def 083. Life Activity Partners were expected to perform different activities with residents each day. They also were expected to gather residents for activities, which included transporting them to and from the activities as necessary. Additionally, Brown's job duties included submitting assessments of residents' behavior and their participation in activities and programs at Wynscape, in accordance with IDPH guidelines. These assessments were to be completed within 72 hours of a resident's admission to Wynscape so as to comply with an IDPH deadline.

In mid-September 2010, Franck gave Brown multiple oral warnings regarding several performance issues. Brown was warned not to leave residents alone on Wynscape's patio and to ensure that the assessments she was submitting were fully completed. Franck also made Brown aware in several emails that she was violating Wyndemere's timekeeping policies by, for example, punching in or out early or not taking a lunch break, although these do not appear to have been considered formal warnings under Wyndemere's progressive discipline policy. On September 28, 2010, Brown received her first written warning for being aggressive and rude to a

co-worker, which according to Wyndemere's investigation, frightened one of the residents. The written warning stated that "[a]ny further incidents of aggressive or inappropriate behavior towards another will result in further disciplinary action up to and including termination." Def.'s Ex. 9 at Def 147. Brown admitted that the incident occurred but maintained that it was taken out of context and blown out of proportion.

On October 1, 2010, Franck sent Brown and several other Life Activity Partners an email emphasizing the importance of completing assessments within 72 hours of a resident's admission. Franck offered her assistance if the Life Activity Partners had problems completing the assessments in a timely manner. On October 18, 2010, after Brown had not completed two assessments within 72 hours as required by Wyndemere and IDPH regulations, Franck sent Brown an email reminding her of her obligation to timely complete the assessments.

On January 10, 2011, Brown received a final written warning detailing a variety of performance and behavioral issues. The issues were summarized as:

- Being non-responsive to questions or comments from staff and/or residents.

- Being rigid or non-cooperative when it means activities you conduct need to be altered or items you have need to be shared with other persons.

- The perception that you show favoritism toward some residents and do not pay as much attention to the needs of others.

- The tone/manner in which you speak and the words you choose to use with residents and staff is perceived as harsh or inappropriate[.]

- Questioning the care provided to residents with other staff in front of residents and/or their family members. This questioning comes across as non-supportive of the care provided and undermines our ability to properly conduct business.

5

- Despite having been trained and coached, you continue to submit documentation that is incomplete and/or inaccurate.

Def.'s Ex. 14 at Def 184. The warning listed specific actions Brown was expected to take to address the outlined concerns. It concluded by stating that "[f]urther instances of performance or behavior issues may result in additional disciplinary action up to, and including, termination." *Id.* at Def 185.

Despite this admonition that failure to correct her behavior could result in additional disciplinary action including termination, Brown failed to timely complete five assessments assigned to her. Franck provided her with additional time to complete these assessments, but Brown failed to meet these deadlines as well. Thus, on February 16, 2011, Wyndemere terminated Brown's employment for failure to complete her assigned tasks despite having been trained and counseled. At the time she was terminated, Brown admitted that she had not completed her assessments in a timely manner.

### B. Comparators

Brown claims that three other Life Activity Partners—Patricia Stuart (Caucasian), Diane Lombardi (Caucasian), and Catherine Charan (Indian)—were treated more favorably than she. Patricia Stuart, who is Caucasian, received a verbal warning about attendance, discussing gossip at work, using her cellular phone at work, and the need to complete all paperwork. On February 9, 2011, Franck issued Stuart her first written warning for missing paperwork and sleeping while in charge of residents. At some point, Wyndemere learned that Stuart appeared to have a disability within the meaning of the American Disabilities Act and thus Wyndemere provided Stuart with the reasonable accommodation of taking short off-the-clock breaks during which she could sleep. Even with this accommodation, however, Stuart was unable to complete her

essential job functions. Ultimately unable to determine any other reasonable accommodations that would allow Stuart to perform her job, Wyndemere terminated Stuart in June 2012.

Diane Lombardi, who is Caucasian, received a verbal warning for rude behavior after complaining that she was required to help out at the front desk, as well as a verbal warning to improve attendance taking, to improve patient involvement in activities, to introduce herself to new residents and discuss activities with them, and to socialize with residents during meals. Brown could offer no examples of Charan receiving more favorable treatment.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Race Discrimination Claims

A plaintiff claiming race discrimination under both § 1981 and the IHRA can prove her case under the direct or indirect method of proof. *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 & n.4 (7th Cir. 2009); *Freeman United Coal Mining Co. v. Human Rights Comm'n*, 527 N.E.2d 1289, 1294, 173 Ill. App. 3d 965, 123 Ill. Dec. 514 (1988).[2] Brown has not set forth any admissible direct evidence of discrimination, and thus the Court will proceed to analyze her claim under the familiar indirect method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this approach, to demonstrate a *prima facie* case of discrimination, Brown must show that (1) she is a member of a protected class, (2) she was meeting Wyndemere's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably. *Naficy v. Ill. Dep't. of Human Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). If Brown establishes a *prima facie* case, Wyndemere must present evidence showing a legitimate, nondiscriminatory reason for the employment action. *Id.* Brown must then present evidence showing that Wyndemere's stated reason is pretextual. *Id.* at 511–12.

Wyndemere argues that Brown was not meeting its legitimate expectations, that her complaints about being required to perform certain job duties do not amount to adverse employment actions, and that she has failed to demonstrate that similarly situated employees outside of her protected class were treated more favorably. Additionally, Wyndemere argues that it has articulated a legitimate, nondiscriminatory reason for Brown's termination—her

---

[2] Because Illinois law uses the same standards as the Seventh Circuit in analyzing IHRA discrimination claims, the Court will cite to pertinent federal cases in its analysis. *See Brandenburg v. Henderson*, No. 09-0558-DRH, 2011 WL 2941307, at *2 n.3 (S.D. Ill. July 20, 2011).

failure to timely complete the assessments despite numerous warnings—and that Brown cannot establish that that reason was pretextual.

### A. Legitimate Expectations

Wyndemere first argues that Brown was not meeting its legitimate expectations at the time of her termination as evidenced by the repeated application of its progressive discipline policy to Brown. Although the Seventh Circuit has cautioned that district courts need not reach the pretext analysis without first determining whether the plaintiff's *prima facie* case is met, where "an employer has cited performance issues as the justification for its adverse action, the performance element of the prima facie case cannot be separated from the question whether the employer proffered a nonpretextual explanation for its challenged conduct." *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008); *see also Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012). Accordingly, whether Brown was meeting Wyndemere's legitimate expectations will be discussed in connection with the pretext analysis below.

### B. Adverse Employment Action

"An adverse employment action is one that significantly alters the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). An adverse employment action must be materially adverse, such as a termination or demotion, and not just a "mere inconvenience or an alteration of job responsibilities." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001)). There is no dispute that Brown suffered an adverse employment action when she was terminated. But she also complains that she was given additional jobs, such as transporting residents to and from activities, performing different activities for her group each day, and

9

starting her group earlier than the scheduled time. None of these alleged extra jobs, however, rises to the level of an adverse employment action. Rather, Wyndemere has submitted evidence that they were part of her regular job duties and thus are not actionable as adverse employment actions.

### C. Similarly Situated Employees

To make out her *prima facie* case, Brown must also identify similarly situated employees outside her protected class who were treated more favorably. To show that an employee is similarly situated, Brown must demonstrate that the employee "(1) dealt with the same supervisor, (2) [was] subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotations omitted) (citation omitted). Brown identifies three Life Activity Partners, Stuart, Lombardi, and Charan, all of whom are non-African-American, as similarly situated. She has failed, however, to submit any admissible evidence to establish that they engaged in similar conduct without differentiating or mitigating circumstances but were not terminated. The only evidence of record is that submitted by Wyndemere, none of which supports a finding that any of these employees were similarly situated. The evidence before the Court indicates that Stuart was counseled for similar behavior and ultimately terminated, although after Wyndemere determined that it could not reasonably accommodate Stuart's disability. Although Lombardi received a verbal warning, there is no indication that further issues arose with her work performance warranting additional disciplinary steps. No evidence is before the Court regarding Charan's behavior and whether it warranted discipline under Wyndemere's progressive discipline policy. Thus, because Brown has failed to meet her burden of showing that similarly situated employees

were treated differently, she has failed to establish a *prima facie* case of discrimination and summary judgment could be granted on this basis alone.

**D.     Pretext**

Even if Brown had established her *prima facie* case, however, her discrimination claims would still fail because she cannot demonstrate that Wyndemere's reason for her termination—that she had failed to timely complete the assessments as required by IDHR regulations despite numerous warnings—was pretextual. To establish pretext, Brown must demonstrate that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir.2006). "A plaintiff shows that a reason is pretextual 'directly by persuading the court that a discriminatory reason more likely motivated the defendants or indirectly by showing that the defendants' proffered explanation is unworthy of credence.' " *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (brackets omitted) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). In determining whether an employer's explanation is honest, courts look to the reasonableness of the explanation. *See Duncan*, 518 F.3d at 492; *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

Brown has not presented any evidence that Wyndemere's proffered reason for her termination was dishonest or based on discriminatory intent. In fact, she admitted both at her termination meeting and in her deposition that she had not timely completed her assigned assessments, undercutting any argument that she was meeting Wyndemere's legitimate expectations and that Wyndemere's stated reason for her termination was pretextual. Although

11

she may believe that Wyndemere's policies were applied unevenly to her and that her failure to complete the assigned assessments did not warrant termination, the Court does not sit as a "super personnel department that second-guesses employer's business judgments." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citation omitted) (internal quotation marks omitted). Because Brown has not established a *prima facie* case of discrimination and has not called into question Wyndemere's proffered reason for her termination, the Court grants Wyndemere's motion for summary judgment on Brown's race discrimination claims.

## II.     Retaliation Claims

In her complaint, Brown also indicated that she was claiming retaliation. Brown may again prove this claim under either the direct or indirect method of proof. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010); *Hoffelt v. Ill. Dep't of Human Rights*, 867 N.E.2d 14, 19, 367 Ill. App. 3d 628, 310 Ill. Dec. 701 (2006). A common element under both methods, however, is that Brown engaged in statutorily protected activity. *Everroad*, 604 F.3d at 481. But aside from submitting her EEOC charge after her termination, which would not support a retaliation claim with respect to her termination, Brown acknowledges that she did not engage in any statutorily protected activity. Thus, her retaliation claim fails and summary judgment is granted for Wyndemere on Brown's retaliation claims.

## CONCLUSION

For the foregoing reasons, Wyndemere's motion for summary judgment [28] is granted.

This case is terminated.

Dated: March 12, 2014

SARA L. ELLIS
United States District Judge